UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY R. TUCHER, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:12-cv-1728-JMS-DML |
| | ) | |
| KEY BANK N.A., | ) | |
| *Defendant.* | ) | |

## ORDER

Plaintiff Anthony R. Tucher brings this discrimination suit against his former employer Defendant Key Bank N.A. ("Key Bank"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. [Dkt. 1.] Currently pending before the Court is Key Bank's Motion for Summary Judgment. [Dkt. 46.] For the reasons that follow, the Court **GRANTS** Key Bank's Motion for Summary Judgment.

## I.
### PROCEDURAL STANDARDS AND COMPLIANCE

### A. Summary Judgment Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record

for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

### B.    Mr. Tucher's Failure to Comply with the Federal and Local Rules

Before setting forth the factual background, the Court must first address several issues regarding Mr. Tucher's briefing and compliance with the Federal and Local Rules.

First and foremost among them is Mr. Tucher's failure to include in his response brief the "Statement of Material Facts in Dispute" section required by Local Rule 56-1(b). *See* Local Rule 56-1(b) ("The response must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). Instead of including this section, Mr. Tucher includes a section entitled "Statement of Material Facts *Not* in Dispute," which is simply a factual background section of his brief. [Dkt. 57 at 2 (emphasis added).] In other words, Mr. Tucher does not even attempt to identify as such the determinative facts and factual disputes precluding summary judgment, as is explicitly required Local Rule 56-1(b).

The consequence of Mr. Tucher's failure is that he concedes Key Bank's version of events. *See Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 n.1 (7th Cir. 2011). The Court continues to apply the above articulated summary judgment standard, but Mr. Tucher's failure to comply with the Local Rules "reduc[es] the pool" from which the facts and inferences may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to

submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Indeed, although the Court will not rest its decision solely on Mr. Tucher's failure to comply with the Federal and Local Rules, this failure, in conjunction with his numerous other failures detailed below, provide the Court an independent basis to grant summary judgment to Key Bank. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) ("The factual statement required by Local Rule 56.1 is not a mere formality. It follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial, and it substantially facilitates the district court's task in deciding whether a trial is indeed necessary. [The plaintiff's] failure to comply with the local rule was, accordingly, not a harmless technicality, but a mistake that our precedents (for good reason) have deemed fatal.").

Unfortunately, Mr. Tucher's failure to include a "Statement of Material Facts in Dispute" section is but the first of many deficiencies with his brief, the rest of which were exhaustively (and helpfully) cataloged by Key Bank. [Dkt. 64 at 2-13.] The Court highlights many of these deficiencies here so as to further demonstrate that the pool of evidence the Court may properly consider when deciding this motion is even further reduced. In the end, Mr. Tucher is left with very little admissible evidence supporting his claims.

As a general matter, Mr. Tucher rarely points to record evidence supporting his factual assertions as in the manner prescribed by the Federal and Local Rules. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing *to particular parts* of materials in the record . . . .") (emphasis added); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."); Local Rule

56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence.  The evidence must be in the record or in an appendix to the brief.  The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.").  Specifically, Mr. Tucher violated these rules by: (1) failing to even attempt to cite evidence following many assertions of fact; (2) citing excerpts from his deposition that are not part of the record; (3) citing portions of his deposition that in no way support the assertion of fact made in his brief; and (4) citing entire lengthy documents without referring to "a page or paragraph number or otherwise similarly specify[ing] where the relevant information can be found in the supporting evidence," Local Rule 56-1(e).

Furthermore, as Key Bank points out, Mr. Tucher relies on his own hearsay statements from his deposition to advance his claims.  Hearsay is "a statement that . . . a party offers in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c)(2).  "And hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed, provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live."  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *see MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.").  Mr. Tucher's deposition testimony that (1) his doctor advised him to pursue a job with Key Bank more seriously; (2) his doctor ordered him to lower his stress level due to his recent heart attack; and (3) his doctor advised him to take a leave of absence from work, [*see, e.g.*, dkt. 58 at 13], are

all hearsay statements of Mr. Tucher's doctor that cannot be considered to prove the truth of the matter asserted.

Despite the fact that "[a] party must support *each fact the party asserts in a brief* with citation to . . . admissible evidence," Local Rule 56-1(e) (emphasis added), the entire argument section of Mr. Tucher's brief—which spans eight pages—contains *five* citations to the record, [*see* dkt. 57 at 6-13]. Worse still, two of these citations are to deposition excerpts that he failed to submit with into evidence. [*See id.* at 8.] This leaves the entire argument section of his brief with only three citations to admissible evidence. Such a brief is inexcusable; it is detrimental to both Mr. Tucher's case and the Court's decisional process. Based on the foregoing, the Court will not consider Mr. Tucher's assertions of fact accompanied only by inadmissible hearsay or one of the four improper briefing techniques detailed above. This leaves very little evidence for the Court to consider, as it would be difficult to overstate Mr. Tucher's failure to comply with the rules.

Although the Court is under no obligation to do so, it will consider the evidence to which Mr. Tucher properly cites in his section entitled "Statement of Material Facts Not in Dispute" and attempt to link it to his arguments. To facilitate this process, the Court created as an exhibit to this Order a copy of Mr. Tucher's brief, wherein the Court crossed out all factual assertions involving one of the four types of violations of the Federal and Local Rules set forth above or those accompanied only by citations to inadmissible hearsay. As demonstrated by the Court's exhibit, excluding background facts that have no bearing on Mr. Tucher's claims, he is left with the following factual assertions supporting his claims:

- Mr. Tucher returned to Key Bank from his leave of absence with a doctor's note limiting him to forty hours of work per week. Mr. Bontreger stated that the note "doesn't say you

can return to work full-time," which Mr. Tucher interpreted to mean that he needed to work more than forty hours per week.  [Dkt. 57 at 3 (citing dkt. 59 at 1, 2).][1]

- Although Ms. Hampton attested that she instructed Mr. Tucher to not stay at the bank branch after hours, Mr. Tucher testified that Ms. Hampton merely discouraged him from doing so.  Further, he testified that it was necessary to stay after hours to complete his work.  [*Id.* at 5 (citing dkt. 49-1 at 28).]

- Mr. Earley treated other Key Bank branch managers move favorably than Mr. Tucher— *e.g.*, Kelly Gerling was allowed to arrive late to work while Mr. Tucher was not.  [*Id.* (citing dkt. 49-1 at 37-40).]  Moreover, all employees at Mr. Tucher's branch except Mr. Tucher received a performance-based raise in 2009 and 2010; he instead received a bonus.  [*Id.* at 5-6 (citing dkt. 59 at 9).]  Finally, another Key Bank branch manager, Gary Guevitz, was over the age of sixty and also terminated by Key Bank.  [*Id.* at 6 (citing dkt. 59 at 15-16).]

- After Ms. Hampton placed Mr. Tucher on the Final Level PIP and provided him with the Exit Agreement, he provided her with a doctor's note and told her he needed to be placed on leave.  [*Id.* at 6 (citing dkt. 59 at 1).]

- Mr. Tucher denies ever making a racially offensive comment and denies any incident involving a coworker's water bottle.  [*Id.* (citing dkt. 56 at 4).]

In sum, Mr. Tucher's glaring failures to comply with the Federal and Local Rules have consequences.  In deciding Key Bank's Motion for Summary Judgment, the Court will only consider these factual assertions, as they are the only ones supported by citations to admissible record evidence in accordance with the Federal and Local Rules.  Given the small universe of facts that can be considered in assessing Mr. Tucher's claims, it is perhaps unsurprising that he produced insufficient evidence to avoid summary judgment in Key Bank's favor.

---

[1] Contrary to the Court's Practice and Procedures, Mr. Tucher cited to specific pages of his deposition rather than the docket number and .pdf page number on which the relevant testimony can be found.  This is yet another deficiency in Mr. Tucher's brief.  However, because Key Bank too failed to use the Court's required citation format, the Court will overlook both parties' errors in this respect.  The Court notes, however, that using this improper citation format made the Court's review of the parties' briefs unnecessarily cumbersome.

## II.
### BACKGROUND

In deciding a motion for summary judgment, the Court typically draws the factual background from the undisputed evidence and, if certain evidence is disputed, views that evidence in the light most favorable to the non-moving party. The Court follows that practice here; but as discussed in detail in subsection I.B above, Mr. Tucher's brief utterly fails to comply with the briefing and evidentiary procedures mandated by the Federal and Local Rules. Once the Court cuts through his missteps in this regard, very few of his factual assertions bearing on his claims may actually be considered by the Court in deciding this motion. Therefore, the Court draws the factual background primarily from the evidence that remains—namely, the undisputed evidence submitted by Key Bank—and supplements it with the few pieces of relevant admissible evidence to which Mr. Tucher directs the Court.

Mr. Tucher applied for employment with Key Bank in April 2009. [Dkt. 49-1 at 7.] Lisa Hampton, Key Bank's Area Retail Leader, scheduled an interview with Mr. Tucher, but offered to reschedule the interview after Mr. Tucher informed her that he suffered a heart attack. [Dkt. 48-2 at 2.] After two rounds of interviews, Key Bank offered Mr. Tucher the position of Key Center Manager ("KCM"), and he accepted the position in June 2009. [*Id.*] As a KCM, Mr. Tucher was ultimately responsible for an entire Key Bank branch. [Dkt. 49-1 at 11.]

Initially, Ms. Hampton was Mr. Tucher's immediate supervisor. [*Id.* at 13.] From June 2009 to April 2010, Ms. Hampton observed several deficiencies in Mr. Tucher's job performance, including his failure to report to work on time, properly document client leads, and update his calendar (despite frequent requests by Ms. Hampton for him to do so). [Dkt. 48-2 at 3.] In short, Ms. Hampton felt that Mr. Tucher's job performance declined during this period. [*Id.*] Furthermore, Ms. Hampton attests that she repeatedly instructed Mr. Tucher not to work at

the branch after hours, but Mr. Tucher testified that she merely discouraged him from doing so and that he needed to stay after hours to complete his work. [Dkt. 49-1 at 28.]

Around April 2010, Brian Earley became Mr. Tucher's immediate supervisor. [*Id.* at 13.] Mr. Tucher took a medical leave of absence from May to June 2010, after which he returned to Key Bank with a doctor's note limiting him to forty hours of work per week. [Dkt. 59 at 2.] Mr. Tucher showed Nick Bontreger, Key Bank's District Retail Leader, the doctor's note, to which he responded that "this doesn't say you can return to work full-time." [*Id.*] Mr. Tucher interpreted this statement as an indication that he needed to work more than forty hours a week. [*Id.*]

Subsequently, Mr. Tucher's poor job performance continued, and on at least four occasions, Mr. Earley attempted to work with Mr. Tucher to improve his performance. [Dkt. 48-5 at 3.] Despite this, Mr. Tucher continued to have "attendance issues," as he was often not in the office and none of the staff at his branch knew of his whereabouts. [*Id.*] Mr. Earley placed Mr. Tucher on a First Level Performance Improvement Plan ("PIP") on January 7, 2011. [*Id.*; dkt. 49-1 at 84-85.] The First Level PIP highlighted that Mr. Tucher was not meeting any of his six numerical performance goals (*e.g.*, his "deposit production" was only 20% of the goal). [Dkt. 49-1 at 85.] It concluded by stating, "It is critical that [Mr. Tucher] make a significant and sustained improvement in his performance to the areas outlined," and warned that failure to do so could result in a Second Level PIP or termination. [*Id.* at 85-86.] Mr. Tucher signed the First Level PIP and stated that he would present comments to human resources at a later date, but never did. [Dkt. 49-2 at 4.]

Mr. Earley did not believe Mr. Tucher's performance subsequently improved, and thus recommended a Second Level PIP. [Dkt. 48-5 at 4.] Mr. Tucher was presented with a Second

Level PIP on March 16, 2011, but did not sign it. [Dkts. 49-1 at 88-91; 49-2 at 4.] Approximately one month later, on April 11, Mr. Tucher filed an Open Door Dispute ("ODD"), which is a method by which a Key Bank employee can make a formal complaint to the company. [Dkt 49-1 at 92-107.] In his ODD, Mr. Tucher stated, among other things, that he wanted his Second Level PIP cancelled because his performance numbers were higher than reflected in the PIP, and he also wanted to "point out this pattern of . . . favoritism and inconsistencies in how various employees are being treated." [*Id.* at 93.] Among other things, Mr. Tucher complained that Mr. Earley treated other Key Bank branch managers move favorably than Mr. Tucher—*e.g.*, Kelly Gerling was allowed to arrive late to work while Mr. Tucher was not. [*Id.* at 37-40.]

Yolanda Jackson, a Key Bank Senior Employee Relations Consultant, investigated Mr. Tucher's allegations by, among other things, interviewing Mr. Tucher and Mr. Earley. [Dkt. 49-2 at 4.] Ultimately, she found that no misconduct occurred and that it was appropriate to issue Mr. Tucher a Second Level PIP. [*Id.* at 5.] However, desiring to reach an amicable outcome with Mr. Tucher, Key Bank offered him two options, both of which involved continued employment and the removal of the Second Level PIP. [*Id.*] Mr. Tucher did not respond to this offer and thus simply remained in his position. [*Id.*]

On June 18, 2011, Mr. Tucher filed a Step Two ODD, [dkts. 49-1 at 108; 59 at 15], the purpose of which was to "review how the Step One Open Door process was conducted," [dkt.49-1 at 153]. Mr. Tucher challenged Key Bank's handling of his Step One ODD and continued to allege that favoritism was being shown to certain Key Bank employees. [*Id.* at 108-10.] Key Bank further investigated Mr. Tucher's concerns and determined that they did not justify a Step Two Open Door process. [*Id.* at 153.]

In September 2011, reorganization at Key Bank caused Ms. Hampton to return to her previous role as Mr. Tucher's direct supervisor. [Dkt. 48-3 at 3.] She determined that his previous performance issues were worse than they were before and that his performance numbers remained low. [Dkts. 47 at 9; 49-2 at 5.] Having not been involved in his earlier PIPs or ODDs, Ms. Hampton placed Mr. Tucher on another First Level PIP. [Dkt. 48-2 at 3.]

Mr. Tucher's performance again failed to improve, and on March 13, 2012, he was accelerated to a Final Level PIP and, as an alternative to complying with the PIP, provided an Exit Agreement. [*Id.* at 4; *see* dkt. 49-2 at 7.] Key Bank thought this was the appropriate course of action for several reasons: (1) Mr. Tucher's results did not follow the action plan for improvement in his First Level PIP; (2) "[a]fter multiple requests, Mr. Tucher frequently failed to arrive to work on time"; (3) even though it was made clear to Mr. Tucher that Key Bank preferred he not stay at the branch after hours, video footage revealed he often did, "sometimes until after midnight and on Sundays," during which times he would access dating websites; (4) Mr. Tucher told his branch relationship manager, Tod Higbee, that Mr. Tucher could not do his scheduled calls that had been on the calendar for some time, stating: "This is my fucking office and I will do what I want"; and (5) other employees in the branch were scared of Mr. Tucher "because his behaviors were erratic" and he yelled at them. [Dkt. 49-2 at 7.]

The day before Mr. Tucher was presented with his Final Level PIP and Exit Agreement, Key Bank's Ethics Hotline received an anonymous call (later identified as being made by a specific Key Bank Teller at Mr. Tucher's branch) complaining that Mr. Tucher told her and other employees "that he was going to rub his penis on a water bottle so [another employee] would drink it." [*Id.* at 32.] According to the caller, Mr. Tucher then took the bottle to the bathroom and another employee later drank from the bottle. [*Id.*] On March 21, Ms. Jackson interviewed

several employees regarding the incident.  [*Id.* at 7.]  The other employee in the room at the time, who identified himself as Hispanic, confirmed that the caller's story and further told Ms. Jackson that Mr. Tucher had made a racially offensive comment to him less than a month prior to that incident.  [*Id.* at 38.]  When asked about these incidents during his deposition, Mr. Tucher denied any involvement in the water bottle incident and denied making any racially offensive statements.  [Dkt. 56 at 4.]

The next day, Ms. Jackson interviewed Mr. Tucher about the water bottle incident.  [Dkt. 49-2 at 7.]  Following the interview she suspended him with pay pending the result of the investigation.  [*Id.* at 7-8.]  Ms. Jackson completed her investigation on March 28.  [*Id.* at 8.]  Due to the findings of her investigation, she recommended that Mr. Tucher be terminated due to evidence of "numerous violations of KeyBank's Professional Conduct and Harassment Policies."  [*Id.*]  Ms. Jackson, Mr. Bontreger, and Ms. Hampton agreed "to allow Mr. Tucher to take advantage of the previously offered Exit Agreement and voluntarily resign, if he chose to do so on or before April 3, 2012."  [*Id.*]

Late in the day on April 2, Mr. Tucher emailed Ms. Jackson requesting a medical leave of absence, to which she did not respond.  [*Id.*]  Instead, because Mr. Tucher had not signed the Exit Agreement by the April 3 deadline, Key Bank terminated him employment.  [*Id.* at 8-9; *see id.* at 155-56.]

On June 19, 2012, Mr. Tucher filed a charge of discrimination against Key Bank with the Equal Employment Opportunity Commission ("EEOC").  [Dkt. 1-1 at 3.]  In his charge, he alleged that Key Bank discriminated against him due to his age (53) and disability (heart disease) and that they retaliated against him for engaging in a protected activity.  [*Id.* at 3-4.]  The EEOC

was unable to conclude that any discrimination or retaliation occurred and thus issued Mr. Tucher a right to sue letter on August 28, 2012. [*Id.* at 2.]

Mr. Tucher filed the instant suit on November 26, 2012, alleging that Key Bank violated the ADEA, ADA, and Rehabilitation Act. [Dkt. 1 at 1-2.] Key Bank now moves for summary judgment. [Dkt. 46.]

### III.
#### DISCUSSION

#### A.      Age Discrimination

The Court need not address at length Mr. Tucher's age discrimination claim. The ADEA makes it unlawful for an employer to discharge an employee due to that individual's age. *See* 29 U.S.C. § 623(a)(1). To prove discrimination under the ADEA, the plaintiff can proceed under either the direct or indirect method. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). Mr. Tucher concedes he cannot proceed under the direct method, and thus attempts to utilize the indirect method. [Dkt. 57 at 12-13.]

The indirect method requires a plaintiff to follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first set forth a *prima facie* case of discrimination, which requires a showing that: "(1) he was over forty years of age; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002). If the plaintiff successfully makes this showing, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse action. *Id.* Should the defendant meet this requirement, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* Finally, "a plaintiff bringing a disparate-treatment claim pursuant to the

ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

Key Bank contends that Mr. Tucher cannot meet the second and fourth prongs of the *prima facie* case, and that even if he could, he cannot show pretext because "there is no evidence to impugn the honesty of KeyBank's nondiscriminatory reason for Mr. Tucher's termination"— namely, that Ms. Jackson's investigation of Mr. Tucher revealed that he "engaged in inappropriate sexual comments and actions, used profanity, disrespected his staff, and interfered with their work performance."  [Dkt. 34 at 16-19.]  Mr. Tucher's response is woefully deficient. In totality, without citing any evidence, Mr. Tucher responds: "Mr. Tucher has submitted evidence that disputes Key Bank's claim that he was not meeting its legitimate expectations.  He has also submitted evidence that Key Bank's expectations were not, in fact, legitimate. Furthermore, the statement of facts set out above demonstrate[s] that he suffered an adverse employment action and that a similarly situated younger person was treated more fairly."  [Dkt. 57 at 12-13.]

Looking past his failure to cite the evidence establishing these things and explain why that evidence is sufficient, Mr. Tucher does not even assert that Key Bank's proffered justifications were a pretext for age discrimination.  Therefore, because Mr. Tucher did not even attempt to establish that Key Bank's reasons for terminating his employment were pretextual, the Court can assume without deciding that he demonstrated a *prima facie* case of discrimination and focus solely on the question of pretext.  *See Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 657 (7th Cir. 2009); *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001).  Having not argued or cited evidence establishing pretext, there is no genuine issue of material fact regarding

the truth of Key Bank's proffered justification for terminating Mr. Tucher's employment.[2]

Accordingly, summary judgment in favor of Key Bank on Mr. Tucher's ADEA claim is warranted.[3]

**B.     Disability Discrimination**

Mr. Tucher contends that Key Bank violated the ADA when it (1) failed to provide him a reasonable accommodation for his disability and (2) discharged him due to his disability. [*See* dkt. 57 at 7-11 (discussing Mr. Tucher's ADA claim in terms of both his termination and Key Bank's alleged failure to accommodate his disability).] The Court addresses each of these ADA claims in turn.

1.     *Reasonable Accommodation*

The ADA "requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (alterations in original) (quoting 42 U.S.C. § 12112(b)(5)(A)).   Mr. Tucher argues that his heart disease qualifies as a disability under the ADA and that Key Bank failed to accommodate this disability by requiring him to work more than forty hours a week, contrary to his doctor's recommendation. [Dkt. 57 at 9-10.] Key Bank contends that Mr. Tucher cannot bring an ADA reasonable accommodation claim because he did not bring such a claim in his EEOC charge or Complaint and, alternatively, even if he could

---

[2] To the extent that Mr. Tucher intends his pretext argument regarding his ADA claim to apply to his ADEA claim as well, it fails for the same reasons discussed below regarding his ADA claim.

[3] Summary judgment is proper for the additional reason that Mr. Tucher failed to argue, let alone establish with admissible evidence, "that age was the 'but-for' cause of [his termination]." *Gross*, 557 U.S. at 180.

bring such a claim, it is time-barred. [Dkt. 64 at 12.] The Court agrees with both of Key Bank's arguments.

A plaintiff cannot generally bring claims in a lawsuit "'that were not included in [his] EEOC charge.'"[4] *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). "However, a plaintiff can still bring [claims not included in the EEOC charge] if they are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Id.* (alteration in original) (citations and quotation marks omitted). "To be like or reasonably related, the relevant claim and the EEOC charge must, at minimum, describe the same conduct and implicate the same individuals." *Id.* (citations and quotation marks omitted). "Although this rule is not jurisdictional, it is a condition precedent with which Title VII plaintiffs must comply." *Cheek.*, 31 F.3d at 500 (citations omitted).

Mr. Tucher's reasonable accommodation claim is predicated on Key Bank's failure to cap his hours at forty per week to accommodate his heart condition once he returned from medical leave in June 2010. [Dkt. 57 at 10.] But Mr. Tucher did not describe this alleged conduct, or any similar conduct, in his EEOC charge. [*See* dkt. 1-1 at 3-4.] The most closely related conduct detailed in the EEOC charge is Mr. Tucher's allegation that Mr. Early and Mr. Bontreger did "not allow[] [him] to leave for lunch to take [his] medication[] on one occasion." [*Id.* at 3.] But this is categorically different than a reasonable accommodation claim predicated on Key Bank's failure to cap his hours at forty per week. Moreover, the allegation regarding lunch detailed in Mr. Tucher's EEOC charge allegedly occurred in March 2011, [*id.* at 3], but

---

[4] Although this principle is often applied to Title VII claims, it equally applies to ADA claims. *See Elliot v. Dedelow*, 115 Fed. Appx. 881, 883 (7th Cir. 2004) (applying the same standards to an ADA claim).

Mr. Tucher contends that he was denied his hours accommodation in June 2010, [dkt. 57 at 10]. This conclusively demonstrates that the only allegation in Mr. Tucher's EEOC charge that is even remotely related to a denied accommodation is not "the same conduct" that forms the basis of his reasonable accommodation claim. *Lavalais*, 734 F.3d at 634. Accordingly, Mr. Tucher failed to meet this condition precedent for bringing his claim.

Alternatively, even if the allegations in Mr. Tucher's EEOC charge were sufficient, his reasonable accommodation claim is time-barred. In Indiana, charges of discrimination "must be filed within 300 days of the occurrence of the act that is the basis of the complaint." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994). Mr. Tucher filed his EEOC charge on June 19, 2012, and 300 days before that date is August 24, 2011. Thus any contentions by Mr. Tucher that Key Bank "failed to accommodate his disability" before August 24, 2011, "cannot be used to support [his] claim." *Teague v. Nw. Mem'l Hosp.*, 492 Fed. Appx. 680, 683 (7th Cir. 2012). Yet Mr. Tucher's reasonable accommodation claim is predicated on Key Bank's failure to accommodate his request—made in *June 2010*—to work a maximum of forty hours per week. [Dkt. 57 at 10 (arguing that in "June of 2010" he presented Mr. Earley and Mr. Bontreger "with a note from his treating physician which stated that he was available to work forty (40) hours per week due to [Ms. Tucher's] adverse side effect of his heart condition," yet "it was clear that neither . . . was willing to extend reasonable accommodations" and he "was required to continue working 50+ hours per week").] Although this is one of the rare occasions that Mr. Tucher points to admissible evidence supporting his factual assertions, [*see id.*], Mr. Tucher himself acknowledges that these events occurred in June 2010—*i.e.*, well before the August 24, 2011, statutory deadline. Because Mr. Tucher relies solely on events before this date to establish his

reasonable accommodation claim, his claim is time-barred, entitling Key Bank to summary judgment. *See Teague*, 492 Fed. Appx. at 683.

### 2.     *Termination*

The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  Mr. Tucher contends that Key Bank violated the ADA when it terminated him due to his disability.  [Dkt. 57 at 7-8.]  Like claims under the ADEA, a plaintiff may prove an ADA claim under the direct or indirect method.  *See Dickerson v. Bd. of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).  Mr. Tucher does not have any direct evidence of discrimination and therefore must proceed under the indirect method.

"Under the indirect method of proof, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Id.* (citing *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009)).  "Once a plaintiff has established a prima facie case, the defendant must identify a legitimate, non-discriminatory reason for its employment decision." *Id.* (citing *Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005)).  "If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual." *Id.* (citing *Lloyd*, 552 F.3d at 601).

Key Bank contends that summary judgment is warranted for several independent reasons: (1) Mr. Tucher is not "disabled" as defined by the ADA; (2) there is no evidence supporting the second and fourth elements of the *prima facie* case; (3) there is no evidence that the articulated reasons for Mr. Tucher's termination were pretextual; and (4) Mr. Tucher's stated disability was

not the but-for cause of his termination.  [Dkt. 47 at 24-28.]  Mr. Tucher, again, utterly fails to respond to Key Bank's position with cogent arguments supported by citations to admissible record evidence.

First, Mr. Tucher asserts that his heart disease renders him disabled as defined by the ADA, but fails to cite any record evidence that he has heart disease, let alone evidence regarding how his heart disease limits his abilities.  [Dkt. 57 at 8 (citing only two excerpts from Mr. Tucher's deposition, neither of which was submitted to the Court as part of the summary judgment record).]  But even if the Court assumes that the record evidence regarding Mr. Tucher's heart disease and leave of absence due to that disease are sufficient to establish his disability—which they are likely not, *see Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 607 (7th Cir. 2012) ("[T]he existence of a medical condition alone is insufficient to [establish disability under] the ADA.")—Mr. Tucher cannot prove his ADA claim.

As with his ADEA claim, the Court assumes without deciding that Mr. Tucher could establish a *prima facie* case of ADA discrimination, *see Bodenstab*, 569 F.3d at 657, but concludes that Mr. Tucher presents no evidence that Key Bank's proffered justifications for discharging him were pretextual.  "'Pretext means a dishonest explanation, a lie rather than an oddity or an error.'"  *Id.* (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008)).  Specifically, "'[s]howing pretext requires [p]roof that the defendant's explanation is unworthy of credence.'"  *Id.* (second alteration in original) (quoting *Flar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1063 (7th Cir. 2008)); *see Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013).  Again, Key Bank "based [its] decision to terminate Mr. Tucher on the evidence brought forth by the investigation, including in part: (1) [the Key Bank employee's] claim of sexually harassing and unprofessional conduct and [the] substantiation of

such and (2) the numerous instances of unprofessional behavior by Mr. Tucher cited by all employees[] interviewed." [Dkt. 47 at 27.] To establish that these justifications were pretextual, Mr. Tucher offers conjecture and speculation, but no evidence. [*See* dkt. 57 at 11.] He asserts that the three Key Bank employees interviewed by Ms. Jackson during her investigation of the water bottle incident appear to have "other motivations," that "[i]t is [Mr. Tucher's] belief that [the three employees] concocted a lie in order to compromise [Ms. Tucher's] position with [Key Bank]," and that Mr. Tucher "does not believe there was a thorough investigation into the alleged incident." [*Id.*]

The Court need not assess whether these assertions are sufficient to establish pretext, as Mr. Tucher does not even attempt to cite evidence in support of them. This alone dooms his claim. But even if the Court were to assume that there was evidence bearing out these assertions, they would not establish pretext for at least two additional reasons. First, although Mr. Tucher denied taking part in the water bottle incident, [dkt. 56 at 4], and even if there was evidence that the interviewed Key Bank employees lied in an attempt to get Mr. Tucher fired, this does not establish pretext. Recall that it was Ms. Jackson, Mr. Bontreger, and Ms. Hampton who made the ultimate decision to terminate Mr. Tucher's employment, [dkt. 49-2 at 8], and they were well within their rights to believe the other employees' account of the water bottle incident even if it was an "error" to do so, as an error in judgment alone does not establish pretext. *Bodenstab*, 569 F.3d at 657.

Second, "[w]here an employer proffers 'more than one reason for the challenged action, a plaintiff must address all of the employer's suggested reasons.'" *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 778 (7th Cir. 2013) (quoting *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)). Even if Key Bank's reliance on the water bottle incident was a pretext for

discrimination, Mr. Tucher did not even attempt to undermine Key Bank's other proffered justifications. [*See* dkt. 57 at 11 (arguing only that the water bottle "incident was a pretext to terminating [Mr. Tucher]").] For example, Key Bank asserted that Mr. Tucher was also terminated due to "the numerous instances of unprofessional behavior by Mr. Tucher cited by all employees[] interviewed," [dkt. 47 at 27], such as Mr. Tucher's racially offensive statement to another Key Bank employee, [dkt. 49-2 at 38]. Mr. Tucher's failure to address this proffered justification, along with the others, provides another basis for granting summary judgment in Key Bank's favor.

Accordingly, for the above stated reasons, Mr. Tucher did not produce sufficient admissible evidence supporting either of his ADA claims, making Key Bank is entitled to summary judgment on them both.

### C.      Rehabilitation Act and Retaliation Claims

In his Complaint, Mr. Tucher asserted a claim under the Rehabilitation Act, and he also alleged that Key Bank retaliated against him "for engaging in protected activity." [Dkt. 1 at 1-2.] In its opening brief, Key Bank argues at length that it is entitled to summary judgment on both of these claims. [Dkt. 47 at 28-34.] Mr. Tucher, however, failed to respond to Key Bank's arguments regarding either claim. Indeed, he does not mention the Rehabilitation Act at all, and makes only fleeting references to retaliation without arguing that he has evidence supporting a retaliation claim. [*See* dkt. 57.] Key Bank contends that Mr. Tucher's failure to even mention these claims, let alone argue against its position, amounts to waiver. [Dkt. 64 at 17-18.]

The Court agrees with Key Bank that these claims are waived. Key Bank set forth several arguments as to why it is entitled to summary judgment on Mr. Tucher's Rehabilitation Act and retaliation claims. [Dkt. 47 at 28-34.] Not once in response does Mr. Tucher mention

the Rehabilitation Act, let alone resist Key Bank's conclusion that he cannot make out a claim under it. Nor does Mr. Tucher contend that he has evidence supporting a retaliation claim. The Court will not pursue claims for Mr. Tucher that he himself deems unworthy of pursuit; Mr. Tucher waived his Rehabilitation Act and retaliation claims by failing to respond to Key Bank's arguments regarding them. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as [Mr. Tucher has] done here—results in waiver"); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (affirming the district court's dismissal of three claims as waived because the party "failed to present evidence or argument in favor of them," and stating "[t]hey also failed to respond to the City's arguments against these claims in their reply to the City's motion to dismiss. Because they did not provide the district court with any basis to decide their claims, and did not respond to the City's arguments, these claims are waived."). Accordingly, Key Bank is entitled to summary judgment on Mr. Tucher's Rehabilitation Act and retaliation claims.

## IV.
### CONCLUSION

For the reasons explained, the Court **GRANTS** Key Bank's Motion for Summary Judgment. [Dkt. 46.] Judgment will issue accordingly.


02/06/2014

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF:**

Michael Eric Boring
BORING AND BORING, PC
michael@boringandboring.com

Amy Suzanne Wilson
FROST BROWN TODD LLC
awilson@fbtlaw.com

Janeen L. Feinberg
FROST BROWN TODD LLC
jfeinberg@fbtlaw.com